UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASAD RON HIXON,

Plaintiff,

Case # 21-CV-6142-FPG

v.

DECISION AND ORDER

NIAGARA FALLS P.O. WAYNE GENERAL, *et. al.*,

Defendants.

## INTRODUCTION

Plaintiff Asad Ron Hixon ("Plaintiff") brings this civil rights action against Defendants Niagara Falls Police Officers Wayne General ("General"), Darren Desantis ("Desantis"), Ian Sinclair ("Sinclair"), Lisa Macneil ("Macneil"), and David Wylucki ("Wylucki"). ECF No. 1. Plaintiff brings claims for false arrest, malicious prosecution, and excessive force pursuant to 42 U.S.C. § 1983. *Id.*; ECF No. 10. Defendants move for summary judgment. ECF No. 99. Plaintiff opposes the motion. ECF No. 103. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on

conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citation omitted).

## BACKGROUND

Among the evidence proffered by the parties is video footage—taken from various Niagara Police Officers' body-worn cameras—of the encounter between Plaintiff and the Niagara Police Officers.[1] Video footage can, but does not always, conclusively establish facts for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 379-80 (2007); *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017). Where a videotape "leaves no doubt as to what occurred," *United States v. Paul*, 904 F.3d 200, 203 (2d Cir. 2018), a district court need not countenance contrary factual assertions. *See Scott*, 550 U.S. at 380-81; *Heicklen v. Toala*, No. 08-CV-2457, 2010 WL 565426, at *2 (S.D.N.Y. Feb. 18, 2010).

Conversely, if the video evidence is "ambiguous" or otherwise inconclusive, *Hicks v. Vill. of Ossining*, No. 12-CV-6874, 2016 WL 345582, at *5 (S.D.N.Y. Jan. 27, 2016), a court must employ its usual summary judgment standards and construe the evidence in the non-moving party's favor. *Accord Hulett*, 253 F. Supp. 3d at 482 ("While the video evidence submitted by the parties will certainly be considered and carefully reviewed at this juncture, . . . summary adjudication of a plaintiff's civil rights claim [is permitted] only in those exceptional cases where the video evidence in the record is sufficient to blatantly contradict one party's version of events." (citation modified)).

---

[1] Defendants provided body-worn camera footage to the Court as Defendants' Exhibit E (hereinafter "Exhibit E"), Defendants' Exhibit G (hereinafter "Exhibit G"), Defendants' Exhibit I (hereinafter "Exhibit I"), and Defendants' Exhibit K (hereinafter "Exhibit K"). Exhibit E is Wylucki's body-worn camera footage, Exhibit G is General's body-worn camera footage, Exhibit I is Sinclair's body-worn camera footage, and Exhibit K is DeSantis's body-worn camera footage.

The following are undisputed facts, unless otherwise noted. The incidents that gave rise to the present action occurred in the early morning hours of October 6, 2020, on the 600 block of 20th Street. ECF No. 99-21 ¶ 1; ECF No. 103-2 ¶ 1. Wylucki, a member of the Niagara Falls Police Department, was working as a Patrol Officer in the early morning hours of October 6, 2020. ECF No. 99-21 ¶ 6; ECF No. 103-2 ¶ 6. There is alternate side parking on the 600 block of 20th Street. ECF No. 99-21 ¶ 9; ECF No. 103-2 ¶ 9. When Wylucki arrived on the 600 block of 20th Street in his marked patrol vehicle, he observed a dark colored vehicle parked illegally on 20th Street with its lights on. ECF No. 99-21 ¶ 10; ECF No. 103-2 ¶ 10. Wylucki approached the vehicle to issue a parking ticket. ECF No. 99-21 ¶ 15; ECF No. 103-2 ¶ 15. As he approached, he saw two people lying in the front seats with their seats reclined. ECF No. 99-21 ¶ 16; ECF No. 103-2 ¶ 16. Wylucki saw that the two individuals were breathing and appeared to be passed out or sleeping. ECF No. 99-21 ¶ 18; ECF No. 103-2 ¶ 18. Eventually, the officers learned that the man in the driver's seat was Thomas Anderson ("Anderson") and the man in the front passenger seat was Plaintiff. *See* ECF No. 99-21 ¶ 5; ECF No. 103-2 ¶ 5. Wylucki also observed in plain view a clear plastic bag in the passenger side door compartment that appeared to be consistent with marijuana and a plastic bottle/container that contained an off-white powder substance. ECF No. 99-21 ¶ 19; ECF No. 103-2 ¶ 19. Wylucki suspected, based on his training and experience, that it was narcotics. ECF No. 99-21 ¶ 20; ECF No. 103-2 ¶ 20. Wylucki radioed for assistance. ECF No. 99-21 ¶ 21; ECF No. 103-2 ¶ 21. General, Sinclair, Desantis, and Macneil arrived. ECF No. 99-21 ¶ 22; ECF No. 103-2 ¶ 22. Wylucki advised the officers that he observed suspected narcotics on the passenger side of the vehicle and on Plaintiff's lap. ECF No. 99-21 ¶ 23; ECF No. 103-2 ¶ 23.

Wylucki, who had approached the vehicle's driver side door, and General, who had approached the passenger side door, opened the doors simultaneously and without announcing

themselves. ECF No. 99-21 ¶¶ 34, 37-38; ECF No. 103-2 ¶¶ 34, 37-38. The decision to open both doors simultaneously and unannounced was deliberate and was intended to achieve the element of surprise. ECF No. 103-2 ¶ 92; ECF No. 104-1 ¶ 92. When Wylucki opened the driver's door, Anderson, the driver, remained in his seat. ECF No. 99-21 ¶¶ 38, 40; ECF No. 103-2 ¶¶ 38, 40. Wylucki stayed with Anderson and secured him without incident. ECF No. 99-21 ¶ 45; ECF No. 103-2 ¶ 45. Wylucki was not involved in chasing or restraining Plaintiff, as he remained with Anderson during the incident at issue. Exhibit E.

Plaintiff was woken up when General opened the passenger front door and put a hand on Plaintiff's chest. ECF No. 99-21 ¶ 43; ECF No. 103-2 ¶ 43. At Plaintiff's criminal trial, Sinclair testified that Plaintiff "woke up in a panic" and that "anyone in that situation could . . . be panicked if they just woke up so abruptly." ECF No. 103-2 ¶ 94-95; ECF No. 104-1 ¶ 94-95. General's body-worn camera shows Plaintiff immediately getting out of the passenger seat and running away from General. Exhibit G at 00:15. General and Desantis chased Plaintiff. ECF No. 99-21 ¶ 48; ECF No. 103-2 ¶ 48. Sinclair also pursued Plaintiff once he saw that Wylucki had the driver secured. ECF No. 99-21 ¶ 48; ECF No. 103-2 ¶ 48. Macneil moved from behind Wylucki to the other side of the vehicle to help Sinclair and Desantis detain Plaintiff. ECF No. 99-21 ¶¶ 34, 48; ECF No. 103-2 ¶¶ 34, 48.

General delivered two closed-fist strikes to Plaintiff's head, near his eye. ECF No. 99-21 ¶ 53; ECF No. 103-2 ¶ 53. Macneil saw General punch Plaintiff once, after which Plaintiff relaxed. ECF No. 103-2 ¶ 99; ECF No. 104-1 ¶ 99. After the second punch, Plaintiff ended up on the ground. ECF No. 99-21 ¶ 54; ECF No. 103 ¶ 54. The officers lowered him to the ground. ECF No. 103-2 ¶ 99; ECF No. 104-1 ¶ 99. Plaintiff's testimony is that after he was snatched out of the car and punched in the face by General, he was then punched and kicked more than ten times in the

face, midsection, and legs by multiple officers while held down. ECF No. 103-2 ¶ 100; ECF No. 104-1 ¶ 100. Plaintiff identified General, Desantis, Sinclair, and Macneil as part of the cluster that took him to the ground and held him there. ECF No. 103-2 ¶ 101; ECF No. 104-1 ¶ 101. No body-worn camera captured the punches; General's body-worn camera was knocked off his vest; Sinclair's body-worn camera does not show punches or any Plaintiff flailing; Desantis's body-worn camera was not recording during the incident. ECF No. 103-2 ¶ 102; ECF No. 104-1 ¶ 102.

Plaintiff was unarmed. ECF No. 103-2 ¶ 103; ECF No. 104-1 ¶ 103. No officer observed a weapon, and none was found. ECF No. 103-2 ¶ 103; ECF No. 104-1 ¶ 103. After Plaintiff was placed in handcuffs, General went back to the vehicle Plaintiff had been in to assist Wylucki. ECF No. 99-21 ¶ 67; ECF No. 103-2 ¶ 67. General placed the suspected narcotics he had in his hand on top of the vehicle, and searched the front passenger's side of the vehicle, where a second bag was located in the door handle, as the officers had first observed. ECF No. 99-21 ¶ 68; ECF No. 103-2 ¶ 68. Wylucki took possession of the two initial bags of suspected narcotics that were observed in the vehicle, along with two additional bags of suspected narcotics that were retrieved from Plaintiff's right front pocket. ECF No. 99-21 ¶ 69; ECF No. 103-2 ¶ 69.

After Plaintiff was handcuffed, Sinclair placed Plaintiff in his patrol vehicle and waited for medical assistance to arrive. ECF No. 99-21 ¶ 72; ECF No. 103-2 ¶ 72. Plaintiff was taken to Niagara Falls Medical Center. ECF No. 99-21 ¶ 74; ECF No. 103-2 ¶ 74. Plaintiff arrived at the emergency department not answering questions; he was moaning in pain. ECF No. 103-2 ¶ 107; ECF No. 104-1 ¶ 107. Plaintiff sustained a periorbital contusion, swelling, and a bleeding laceration below his right eye. ECF No. 103-2 ¶ 107; ECF No. 104-1 ¶ 107. Plaintiff was diagnosed with an altered mental state and a periorbital contusion. ECF No. 99-21 ¶ 82; ECF No. 103-2 ¶ 82. Plaintiff underwent a CT scan which depicted right periorbital soft tissue swelling and a small

laceration. ECF No. 99-21 ¶ 80; ECF No. 103-2 ¶ 80. He has a permanent scar and reports light sensitivity and migraines. ECF No. 103-2 ¶ 107; ECF No. 104-1 ¶ 107.

Criminal charges were brought against Plaintiff arising from the October 6, 2020 incident. ECF No. 99-21 ¶ 85; ECF No. 103-2 ¶ 85. While it is undisputed that "some of those charges were dismissed," Plaintiff adds that the assault charge lodged against him at the time of arrest was dismissed at his arraignment. ECF No. 103-2 ¶ 86. It is undisputed that at trial on October 8, 2021, Plaintiff was found guilty of one count of criminal possession of a controlled substance in the third degree, two counts of criminal possession of a controlled substance in the fourth degree, and one count of obstructing governmental administration in the second degree. ECF No. 99-21 ¶ 86; ECF No. 103-2 ¶ 86. Plaintiff was acquitted of resisting arrest. ECF No. 103-2 ¶ 108; ECF No. 104-1 ¶ 108.

On February 10, 2021, Plaintiff filed a complaint in this Court. ECF No. 1. Following this Court's screening order, ECF No. 10, the following claims remained: false arrest, malicious prosecution, and excessive force all pursuant to 42 U.S.C. § 1983 as to Wylucki, General, Desantis, Sinclair, and Macneil. Defendants then filed a Motion for Summary Judgment on July 24, 2026, which is currently before this Court. ECF No. 99.

## DISCUSSION

Defendants move for summary judgment on all three of Plaintiff's claims. ECF No. 99. The Court discusses each claim in turn.

### I. False Arrest Under 42 U.S.C. § 1983

The Court grants summary judgment to Defendants on the false arrest claim. Defendants contend that summary judgment is warranted as to Plaintiff's false arrest claim because "probable cause to arrest" "is a complete defense to an action for false arrest," and here, Wylucki and his

fellow officers had probable cause to arrest Plaintiff on October 6, 2020, in light of the suspected narcotics in plain view. ECF No. 99-20 at 9-11. In the alternative, Defendants argue that qualified immunity shields them from this claim. *Id.* at 11. Plaintiff did not respond to Defendants' argument concerning summary judgment as to false arrest in his Opposition to Defendants' Motion for Summary Judgment. ECF No. 103-1.

When a party is counseled, a court may infer from a party's partial opposition—*i.e.,* a response that references some claims or defenses but not others—that relevant claims or defenses not defended in the opposition have been abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). Here, Plaintiff, who is counseled, did not defend this claim in his opposition. ECF No. 103-1. Consequently, the Court considers the claim to be abandoned, and Plaintiff's false arrest claim is dismissed.

## II. Malicious Prosecution Under 42 U.S.C. § 1983

The Court denies summary judgment to Defendants on the malicious prosecution claim brought pursuant to § 1983. In his opposition, Plaintiff explains that his malicious prosecution claim is only brought based on the resisting arrest and assault charges. ECF No. 103-1 at 9-10. Therefore, the Court will not address the other charges. Defendants contend that Plaintiff's malicious prosecution claim fails because "probable cause is a complete defense to malicious prosecution claims." ECF No. 99-20 at 12. Defendants argue that they had probable cause to arrest Plaintiff on October 6, 2020, in light of the suspected narcotics that Wylucki observed in plain view, and thus, Plaintiff cannot prevail on his malicious prosecution claim. *Id.* at 12-13.

"[U]nlike Fourth Amendment claims of false arrest, in the Fourth Amendment malicious prosecution context, probable cause must support *each* charge brought by the prosecution." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025). Here, Defendants make no

arguments and proffer no evidence as to the circumstances relating to whether there was probable cause to support the resisting arrest and assault charges.[2] *See* ECF No. 99-20 at 12-13. In their motion for summary judgment, Defendants merely focus on the fact that "[they] had probable cause to arrest the Plaintiff" insofar as it related to Plaintiff's possession of a controlled substance. *Id.* Because Plaintiff fails to address whether Defendants ever had probable cause to support charges against Plaintiff for resisting arrest and assault, the Court denies Defendants' motion for summary judgment as to the malicious prosecution claim based on the charges for resisting arrest and assault.

**III. Excessive Force Under 42 U.S.C. § 1983**

Plaintiff brings a claim for excessive force against Wylucki, General, Sinclair, Macneil, and Desantis. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 331 (N.D.N.Y. 2021) (citation omitted). "To succeed on a § 1983 excessive force claim, a plaintiff must show that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citation and internal quotation marks omitted). This "fact-specific inquiry" is informed by factors that include "the severity of the security problem at issue," the threat "reasonably perceived by the officer," and "whether the plaintiff was actively resisting." *Id.* at 322 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Determining whether there is excessive force requires

[2] Notably, no party has produced evidence as to whether Plaintiff was indicted on the resisting arrest charge. *See Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (An "indictment by a grand jury creates a presumption of probable cause. That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." (internal quotations and citation removed)).

"a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (internal quotations and citation omitted). "In conducting this balancing, a court generally considers the following three factors: '(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'" *Cox v. Fischer*, 248 F. Supp. 3d 471, 480 (S.D.N.Y. 2017) (citing *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)).

"Courts in this Circuit regularly hold" that to pursue an excessive force claim, the plaintiff must demonstrate (1) that the plaintiff "sustained some injury," or (2) "that officers gratuitously inflicted pain." *Pesola v. City of New York*, No. 15-CV-1917, 2016 WL 1267797, at *7 (S.D.N.Y. Mar. 30, 2016). The injury "need not be severe." *Id.* Still, "[n]ot every push or shove" is excessive force, *Graham v. Conner*, 490 U.S. 386, 396 (1989), and "a court may grant summary judgment where the force used was *de minimis*," *Campbell v. City of New York*, No. 06-CV-5743, 2010 WL 2720589, at *8 (S.D.N.Y. June 30, 2010). Additionally, "some district courts in this circuit have dismissed Fourth Amendment excessive force claims on the grounds that plaintiff's injuries were *de minimis*." *Rizk v. City of New York*, 462 F. Supp. 3d 203, 223 (E.D.N.Y. 2020) (quotation modified) (collecting cases). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising," although even "[l]ess serious injuries will suffice . . . where the force used was excessive and gratuitous." *Vazquez v. Curcione*, No. 11-CV-443, 2013 WL 5408858, at *4 (W.D.N.Y. Sept. 25, 2013). The Court discusses each alleged use of force in turn.

Plaintiff's complaint alleges two separate instances of excessive force. ECF No. 1 at 3-4. The first instance involves two punches by General to Plaintiff's head. *Id.* at 3. The second involves Plaintiff being "beaten severely" by all Defendants. *Id.* at 4. The Court discusses each instance in turn.

**A. First Instance of Excessive Force**

The Court discusses the first instance of excessive force—the two punches by General—below. In the early morning hours of October 6, 2020, Wylucki, a member of the Niagara Falls Police Department, was working as a Patrol Officer. ECF No. 99-21 ¶¶ 1, 6; ECF No. 103-2 ¶¶ 1, 6. While on patrol, Wylucki observed in plain view a clear plastic bag in the passenger side door compartment next to Plaintiff, who appeared to be sleeping or passed out, and that appeared to be consistent with marijuana and a plastic bottle/container that contained an off-white powder substance. ECF No. 99-21 ¶ 16, 18-19; ECF No. 103-2 ¶ 16, 18-19. Wylucki suspected, based on his training and experience, that it was narcotics. ECF No. 99-21 ¶ 20; ECF No. 103-2 ¶ 20. Wylucki radioed for assistance. ECF No. 99-21 ¶ 21; ECF No. 103-2 ¶ 21. General, Sinclair, Desantis, and Macneil arrived. ECF No. 99-21 ¶ 22; ECF No. 103-2 ¶ 22. Wylucki advised the officers that he observed suspected narcotics on the passenger side vehicle and on the passenger's lap. ECF No. 99-21 ¶ 23; ECF No. 103-2 ¶ 23.

Wylucki, who had approached the vehicle's drive side door, and General, who had approached the passenger side door, opened the doors simultaneously without announcing themselves. ECF No. 99-21 ¶ 38; ECF No. 103-2 ¶ 38. Wylucki's body-worn camera shows that he was not involved in chasing or restraining Plaintiff, as Wylucki remained with Anderson, the driver of the vehicle, during the first instance of excessive force. *See* Exhibit E.

As for Plaintiff, he was woken up when General opened his door and put a hand on his chest. ECF No. 99-21 ¶ 43; ECF No. 103-2 ¶ 43. Body-worn camera footage shows Plaintiff immediately getting out of the passenger seat and running away from General. Exhibit G at 00:15. General and Desantis chased Plaintiff. ECF No. 99-21 ¶ 48; ECF No. 103-2 ¶ 48. Sinclair also pursued Plaintiff once he saw Wylucki had the driver secured. ECF No. 99-21 ¶ 48; ECF No. 103-2 ¶ 48. Macneil, who had been behind Wylucki, ECF No. 99-21 ¶ 34; ECF No. 103-2 ¶ 34, moved to the other side of the vehicle to help Sinclair and Desantis detain Plaintiff. ECF No. 99-21 ¶ 48; ECF No. 103-2 ¶ 48.

It is undisputed that General delivered two closed-fist strikes to Plaintiff's head, near his eye. ECF No. 99-21 ¶ 53; ECF No. 103-2 ¶ 53. Macneil saw General punch Plaintiff once, after which Plaintiff relaxed. ECF No. 103-2 ¶ 99; ECF No. 104-1 ¶ 99. After General's second punch of Plaintiff, Plaintiff ended up on the ground. ECF No. 99-21 ¶ 54; 103-2 ¶ 54. No body-worn camera captured the punches; General's body-worn camera was knocked off his vest; Sinclair's body-worn camera does not show punches or Plaintiff flailing; Desantis's body-worn camera was not recording. ECF No. 103-2 ¶ 102; ECF No. 104-1 ¶ 102.

Each Defendant argues that they are entitled to summary judgment on this claim. The Court discusses this claim as to each Defendant below.

**i. Excessive Force by Wylucki**

As to the first instance of excessive force, Wylucki argues that summary judgment is warranted because he remained with the driver, and was not with Plaintiff, from the moment he and General opened the vehicle doors until Plaintiff was put into Sinclair's patrol vehicle. ECF No. 99-20 at 15; *see* Exhibit E (Wylucki's body-worn camera showing that he remained with the driver). "It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citation and internal quotations omitted); *see Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). "Personal involvement may be established by a showing of direct participation, namely 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation 'such as ordering or helping others to do the unlawful acts.'" *Columna v. City of New York*, No. 19-CV-3801, 2022 WL 767103, at *4 (S.D.N.Y. Mar. 14, 2022) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). Here, it is undisputed that Wylucki did not have any physical contact with Plaintiff during the first instance of excessive force because he remained on the other side of the vehicle with the driver of the car during that time and was not with Plaintiff. ECF No. 99-21 ¶ 61; ECF No. 103 ¶ 61; *see* Exhibit E. Therefore, summary judgment is warranted for Wylucki as to Plaintiff's first claim of excessive force, as he was not personally involved in the alleged excessive force.

**ii. Excessive Force by General**

General argues that summary judgment is warranted as to his two closed-fist punches to Plaintiff's head because (a) the two closed-fist punches to Plaintiff's head were "reasonable under the circumstances," ECF No. 99-20 at 17; (b) Plaintiff's injuries were *de minimis*, *id.*; and (c) he is entitled to qualified immunity, *id.* at 18. The Court discusses each argument below.

**a. Reasonableness**

General argues that summary judgment is warranted because the two closed-fist punches he administered to Plaintiff's head were "reasonable under the circumstances." *Id.* at 17. The Court disagrees that summary judgment is warranted.

Here, Plaintiff has raised a triable issue of fact as to the reasonableness of the degree of force—specifically the two punches—that General used on him, and whether such amount of force

was excessive. Under the circumstances, Plaintiff was certainly entitled to have some degree of force used on him to prevent him getting away; however, this does not mean that an officer is then allowed to use an unlimited amount of force. *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2020) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit."). It is undisputed that General delivered two closed-fist strikes to Plaintiff's head, near his eye. ECF No. 99-21 ¶ 53; ECF No. 103-2 ¶ 53. Nevertheless, a reasonable jury could conclude that the two punches were unreasonable where Plaintiff was unarmed and only sought after for possession of a controlled substance. Further, even if the jury accepted that General's first punch of Plaintiff was reasonable in that it was "in response to Plaintiff swinging his arms, head, and legs in an attempt to get away from Officers," ECF No. 99-20 at 16, as General argues, the second punch could be excessive if Plaintiff were no longer resisting. *Sullivan*, 225 F.3d at 166 ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer.").

Moreover, it is undisputed that Plaintiff underwent a CT scan which depicted swelling of the right periorbital soft tissue and a small laceration. ECF No. 99-21 ¶ 80; ECF No. 103-2 ¶ 80. Plaintiff was diagnosed with an altered mental state and a periorbital contusion. ECF No. 99-21 ¶ 82; ECF No. 103-2 ¶ 82. Further, Plaintiff has a permanent scar and reports light sensitivity and migraines. ECF No. 103-2 ¶ 107; ECF No. 104-1 ¶ 107. Viewing the evidence in the light most favorable to Plaintiff, these injuries present a triable issue of fact as to whether the degree of force used by General was excessive. *See Smith v. Sawyer*, 435 F. Supp. 3d 417, 439 (N.D.N.Y. 2020) (denying summary judgment where triable issues of fact remained as to whether the degree of

force was excessive where the force caused Plaintiff permanent vision loss); *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (reversing grant of judgment as a matter of law where there were "factual issues as to the degree of force actually employed and its reasonableness"); *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) ("The issue of excessive force also was for the jury, whose unique task it was to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct."); *Hicks v. Craw*, 405 F. Supp. 3d 374, 386-87 (N.D.N.Y. 2019) ("Of course, the issue in this case is not whether Defendants could use some force to arrest Plaintiff after he fled them, but whether the force they used was unreasonable under the circumstances."); *Betancourt v. Slavin*, 676 F. Supp. 2d 71, 78 (D. Conn. 2009) (denying defendants summary judgment on their excessive force claim and explaining that there were "disputed issues of material fact" as to, *inter alia*, whether "the degree of force used" was excessive).

**b. *De Minimis* Injuries**

Next, General argues that Plaintiff's injuries, specifically the "bruising/cut to [] Plaintiff's eye" was a *de minimis* injury, and therefore, summary judgment is warranted. ECF No. 99-20 at 17. As discussed above, some district courts in this circuit have dismissed excessive force claims on the ground that Plaintiff's injuries were *de minimis*. *Rizk*, 462 F. Supp. 3d at 223. However, "[i]njuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising," although even "[l]ess serious injuries will suffice . . . where the force used was excessive and gratuitous." *Vazquez*, 2013 WL 5408858, at *4.

Here, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has proffered enough evidence to show that he suffered more than a *de minimis* injury. Due to the events that took place, Plaintiff has a permanent scar and suffers from light sensitivity and migraines. ECF

No. 103-2 ¶ 107; ECF No. 104-1 ¶ 107. He also suffered from a periorbital contusion, swelling, and a bleeding laceration below his right eye. ECF No. 103-2 ¶ 107; ECF No. 104-1 ¶ 107. These injuries include more than short term pain, swelling, and bruising. *See Vazquez*, 2013 WL 5408858, at *4. Accordingly, the Court concludes that Plaintiff has provided sufficient evidence of more than *de minimis* injuries to defeat summary judgment as it relates to the first allegation of excessive force.

**c. Qualified Immunity**

General argues that, in the alternative, he is entitled to qualified immunity and therefore, Plaintiff's claim against him must be dismissed. ECF No. 99-20 at 18-19. "The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and citation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks and citation omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

General seemingly argues that he must be granted summary judgment on the basis of qualified immunity because the facts do not make out a violation of a constitutional right in that "the two closed fist punches that [he] delivered to the Plaintiff on October 6, 2020 were not objectively unreasonable under the circumstances." ECF No. 99-20 at 18. Plaintiff responds that

facts are in dispute as to whether it was reasonable for General to use such force. ECF No. 103-1 at 8.

As described above, *see supra* Part III(A)(ii)(a), there is a genuine dispute of material fact as to whether General's use of force was objectively reasonable under the circumstances. Thus, there are questions of material fact that preclude summary judgment on this basis. General, however, is free to renew this argument at trial.

**iii. Failure to Intervene by Macneil, Desantis, and Sinclair**

In his opposition to Defendants' Motion for Summary Judgment, Plaintiff does not argue that Macneil, Desantis, and Sinclair should be liable for excessive force based on the two punches by General, but instead argues that Macneil, Desantis, and Sinclair should be held liable for failing to intervene while General was engaged in excessive force against Plaintiff by way of the two punches. ECF No. 103-1 at 7-8. This claim does not appear in the complaint and was not a claim that proceeded to service after the Court's initial screening of the complaint. *See* ECF Nos. 1, 10. Rather, the first time that Plaintiff raised a failure to intervene claim was in his opposition to Defendants' Motion for Summary Judgment. ECF No. 103-1 at 10.

A plaintiff may not seek to amend his complaint to add a new claim by way of his opposition. *See, e.g., Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp.3d 303, 321 (S.D.N.Y. 2019) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion . . ..") (quoting *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017)); *see also, e.g., Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (noting that a court "will not consider *causes of action* first raised in Plaintiff's opposition papers"); *Nesheiwat v. City of Poughkeepsie, N.Y.*, No. 11-CV-7072, 2013 WL 620267, at *3 (S.D.N.Y. Feb. 13, 2013) ("Plaintiff may not amend his . . . [c]omplaint through legal arguments

raised for the first time in his opposition papers.") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), *cert denied*, 525 U.S. 1104 (1999).

Here, Plaintiff had plenty of opportunities to file an amended complaint. While the Court recognizes that Plaintiff was initially *pro se* when he filed his complaint over five years ago, ECF No. 1, for over three years Plaintiff has been represented by counsel, and he never filed an amended complaint during that time. ECF No. 45 at 1 (appointing pro bono counsel in July 2023 to "review[] the complaint and draft[] an amended pleading"); ECF No. 51 (granting Plaintiff's counsel's request to expand scope of pro bono representation). Nevertheless, even if Plaintiff were able to amend his Complaint through his opposition, the Court cannot discern what Plaintiff's claim is from the facts he asserted in his opposition. *See* ECF No. 103-1 at 7-8. The extent of Plaintiff's factual recitation when it comes to his failure to intervene argument is:

> MacNeil had a hand on Plaintiff's arm when General punched him; Sinclair and DeSantis were on Plaintiff for the second punch and throughout the struggle on the ground. Plaintiff's complaint, which alleged that multiple named officers beat him, must be read to raise the strongest claims it suggests, including failure to intervene.

ECF No. 103-1 at 8 (citations omitted). It is unclear to the Court how these facts could sufficiently support the elements for a claim of failing to intervene. The Court thus rejects Plaintiff's attempt to raise a failure to intervene claim at this time and will not discuss the claim further.

### B. Second Instance of Excessive Force

As for the second instance of excessive force—the beating of Plaintiff by Macneil, Desantis, Sinclair, and General—Plaintiff's testimony is that after he was snatched out of the car and punched in the face by General, he was then punched and kicked more than ten times in the face, midsection, and legs by multiple officers while held down. ECF No. 103-2 ¶ 100; ECF No. 104-1 ¶ 100. Plaintiff testified that Desantis, Sinclair, Macneil, and General were part of the cluster

that took him to the ground and held him there. ECF No. 103-2 ¶ 101; ECF No. 104-1 ¶ 101. No body-worn camera captured the punches; General's body-worn camera was knocked off his vest; Sinclair's body-worn camera does not show punches or Plaintiff flailing; Desantis's body-worn camera was not recording. ECF No. 103-2 ¶ 102; ECF No. 104-1 ¶ 102. Plaintiff was unarmed. ECF No. 103-2 ¶ 103; ECF No. 104-1 ¶ 103. No officer observed a weapon, and none was found. ECF No. 103-2 ¶ 103; ECF No. 104-1 ¶ 103. Wylucki was not involved in chasing or restraining Plaintiff, as his body-worn camera shows that he remained with Anderson, the driver of the vehicle, during the incident at issue. *See* Exhibit E.

Below, the Court discusses the second instance of excessive force as to each Defendant.[3]

**i. Excessive Force by Wylucki**

As to the second instance of excessive force, as discussed above, Wylucki argues that summary judgment is warranted because he remained with the driver, and was not with Plaintiff. ECF No. 99-20 at 15-16; *see* Exhibit E (Wylucki's body-worn camera showing that he remained with the driver of the vehicle during the excessive force alleged by Plaintiff). Here, it is undisputed that Wylucki did not have any physical contact with Plaintiff during the second instance of excessive force because he remained on the other side of the vehicle with the driver of the car during that time. ECF No. 99-21 ¶ 61; ECF No. 103-2 ¶ 61. Therefore, for the same reasons as discussed above, summary judgment is warranted for Wylucki as to Plaintiff's second instance of excessive force, as he was not personally involved in the incident.

---

[3] The Court construes Defendants' qualified immunity argument to be only for the first incident of excessive force involving General's two punches of Plaintiff, since that is the only incident referenced by Defendants in that section. *See* ECF No. 99-20 at 18-19. In any event, to the extent that Defendants are attempting to raise a qualified immunity argument for the second instance of excessive force, because Defendants' argument fails to address whether the facts of the instant case make out a violation of a constitutional right or whether the right at issue was clearly established at the time of the alleged misconduct, the Court concludes that Defendants are not entitled to qualified immunity on this basis. *See Estate of Devine*, 676 F. App'x at 62 (summary order).

### ii. Excessive Force by Macneil, Desantis, Sinclair, and General

Plaintiff claims that Macneil, Desantis, Sinclair, and General used excessive force when they joined in the attack of Plaintiff after General had punched him in the face. ECF No. 1 at 4. Macneil, Desantis, Sinclair, and General argue that summary judgment is warranted because (a) Plaintiff has failed to identify which officers used excessive force on him, ECF No. 99-20 at 14-15; and (b) the use of force and Plaintiff's injuries were *de minimis*, *id.* at 15.

#### a. Failing to Identify Officers Who Used Excessive Force

Defendants Desantis, Sinclair, Macneil, and General argue that summary judgment is warranted because Plaintiff is unable to identify who actually used excessive force on him and thus, this is "fatal" to his claim. ECF No. 99-20 at 14. Plaintiff testified that he was hit more than ten times in the face, midsection, and legs by multiple officers while held down. ECF No. 103-2 ¶ 100; ECF No. 104-2 ¶ 100.

Defendant cites to two cases, *Ogunbekun v. Town of Brighton*, No. 15-CV-6332, 2025 WL 1413211 (W.D.N.Y. May 15, 2025) and *Davis v. City of Rochester*, No. 14-CV-6562L, 2022 WL 6885334 (W.D.N.Y. Oct. 12, 2022), for the proposition that Plaintiff's inability to identify which officers used excessive force is fatal to Plaintiff's claim. ECF No. 99-20 at 14. However, these cases only support the extremely broad proposition that a movant may satisfy his burden by pointing to an absence of evidence as it relates to an essential element of a non-moving party's claim. *Ogunbekun*, 2025 WL 1413211 at *8; *Davis*, 2022 WL 6885334 at *5. As such, Defendants have not proffered any relevant caselaw to support their argument about why Plaintiff's claim is fatal. Absent case law to support Defendants' contention that this claim must be dismissed because Plaintiff cannot identify who used excessive force, the Court cannot assess the merits of this

argument. Consequently, the Court concludes that summary judgment is not warranted on this basis.

**b. *De Minimis* Force and Injuries**

Macneil, Desantis, Sinclair, and General argue that they are entitled to summary judgment because the force they used and the injuries Plaintiff sustained were *de minimis*. ECF No. 99-20 at 15. However, as the Court has described above, there is a dispute as to the amount of force Macneil, Desantis, Sinclair, and General used, and Plaintiff provided evidence that he suffered more than a *de minimis* injury. For example, it is undisputed that Plaintiff testified that he was punched and kicked more than ten times in the face, midsection, and legs by multiple officers while being held down. ECF No. 103-2 ¶ 100; ECF No. 104-1 ¶ 100. In addition, Plaintiff sustained a periorbital contusion, swelling, a bleeding laceration below his right eye, arrived to the emergency department not answering questions and moaning in pain, was diagnosed with altered mental status and periorbital contusion, has a permanent scar and reports light sensitivity and migraines. ECF No. 103-2 ¶¶ 82, 107; ECF No. 104-1 ¶¶ 82, 107. Accordingly, the Court concludes that genuine issues of material fact preclude summary judgment on the basis that the force used was *de minimis*, and Plaintiff has provided sufficient evidence to preclude summary judgment on the basis that his injuries were *de minimis.*

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 99) is GRANTED IN PART AND DENIED IN PART.

Plaintiff's claims for false arrest and malicious prosecution under § 1983 are DISMISSED as to all Defendants. Plaintiff's claim for excessive force as to Wylucki is DISMISSED. Plaintiff's

claim for excessive force pursuant to § 1983 against General, Macneil, Desantis, and Sinclair remain.

The Clerk of Court is directed to terminate Wylucki as a Defendant. The Court sets a status conference for January 20th at 11:00 AM to hear from the parties about the progress of this action.

IT IS SO ORDERED.

Dated: November 16, 2026

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York